Sauer, Inc. v. Thomas E. Brandon, etc. Counsel should know that after this case we will take a break and then be back. Mr. Holbrook. Thank you, Your Honor. I'm Stephen Holbrook, representing SIG Sauer. I'd like to reserve three minutes of my time for a vote, please. You may have it. Thank you. This case involves a statutory scheme with very plain language carefully crafted by Congress. It's a case in which the statutory language has been explained in a very clear circuit, a court decision of this circuit, a decision that relied on case law from other circuits and which has never been contradicted in any other case outside of the circuit. And it's a case also in which the facts are very clear. There's inferences that are being made. In fact, there's inferences, powerful inferences, I think, that the government has been making. But in terms of the basic facts, they are as follows. The company is a firearms manufacturer. It wishes to market a rifle with what's called a muzzle brake on the end. A muzzle brake is a device that reduces the kick in the shoulder when a rifle is fired. It proposes the muzzle brake to be rather lengthy so that the rifle barrel meets a federal requirement of being 16 inches to avoid various restrictions and a rifle that fires safely without undue pressure. The company took this matter to the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the ATF, for classification purposes and sought a determination that it's a firearm that meets the requirements of 16-inch barrel and that the muzzle brake is not a regulated object, specifically that it's not defined as what's called a firearm silencer or firearm muffler. The definition is threefold in the case of a firearm silencer. There's no real silencer, by the way. There's noise reduction that real silencers make, but they're never really silent. The first definition is the one that this court exposited in the United States v. Brooker case decided in 2010. And that definition states that a firearm silencer is a device for silencing or muffling the report of a portable firearm. So it's a complete device. There's a second definition, which is a combination of parts designed or redesigned and intended to assemble or fabricate a firearm silencer. And then the third definition that's relevant here, any part intended only for use in fabrication or assembly of a silencer. And the part in this case, the muzzle brake, Sig Sauer contends, is nothing but a muzzle brake. ATS position is that it fits that any part definition, any part intended only for use as a silencer. Now, it's not factually disputed that the company proposed to sell this rifle as an ordinary rifle and that a consumer would have different options. They could buy the gun and use it exactly as it was designed and marketed as a normal rifle. Also, the muzzle brake device has threads where you could attach other devices to it. You could attach what's called a compensator, a flash suppressor, or you could attach what would be defined as a silencer. In the firearms agency's opinion, they have a sentence where they say comparing this muzzle brake to other muzzle brakes. Yes, Your Honor. They say compared to other muzzle brakes, none of the other muzzle brakes are designed to create an expansion chamber when encased. This one is not either, unless it is encased. You can take any muzzle brake, including those ATFs. So there's nothing special about this that makes it work better as a silencer when encased than any other muzzle brake? The testing shows that you could encase any one of these. That's not what I'm asking. Is there anything about this particular muzzle brake that makes it work better as a silencer because of the way this muzzle brake is designed when encased relative to any other muzzle brake? I understand, Your Honor. It doesn't operate any better in terms of lowering the decibels, but the testing shows that. Are there any features of this muzzle brake that are included to serve the end of creating an expansion chamber when encased that would not be true of other muzzle brakes? No, Your Honor. The design is the same. This is just longer. And the testing that ATF did that also Sig Sauer did indicates that you could take the muzzle brakes that are marketed and ATF concedes are not silencers, and you get the same reduction, approximate reduction of decibels. And just so I understand your argument, if this muzzle brake was designed such that when encased, it created expansion chambers to an extent or in a way that a typical muzzle brake didn't, would you agree that then this would count as a silencer? It would depend on whether it continued to have dual purposes. By definition, it also serves as a muzzle brake. Right. And if a consumer were to buy it, even if it would make a better reduction of noise if encased, but if the consumer never does that, never goes through the legal process, never gets the other parts, it's still just a muzzle brake. Well, that sort of concerns me as an answer for the following reason. If I am a manufacturer and I design two muzzle brakes, here is one, really will be a terrible silencer. Here is another. I've added some features to make it a great silencer, and I market it. Here is a muzzle brake. You have to put a cap on it. Works fantastically as a silencer. Costs a little more. Or you could buy my other muzzle brake that does not work well as a silencer. Costs a little less. Your position would be since both can operate as muzzle brakes, neither is a silencer. That seems strange to me.  Yeah, but the point is why did you add the features that make it work well as a silencer, other than to have an intent for it to work as a silencer? Because you could have designed the muzzle brake without those added features. Well, every muzzle brake is somewhat different, and some would be more adaptable to use with a silencer and others would not. And the question is if a manufacturer chooses to make it more adaptable, why can't the agency say, well, the additional features that make it more adaptable were intended only to make it a silencer since you could have made it so it wouldn't be so easily adaptable? May I answer?  Thank you, Your Honor. My answer would be the same as in the Crooker case. That was much more adaptable to use on a firearm. That was a complete silencer, and the court held that it was for an air gun. It was not for a firearm and, therefore, was not a firearm silencer. So if the product is being made and sold and used solely with the muzzle brake feature, even though it could be more convertible to use with a silencer if you had the tube, then it would still not be a silencer unless that was the intent. It says intended only for use in assembly as a silencer. That would be my response. Thank you, Your Honor. Good morning. Abby Wright on behalf of ATF. I'd like to begin with Judge Barron's question about the monolithic baffle core. This is designed so that it operates better than other muzzle brakes when encased. In the record, appendix page 62, footnote 2, ATF talks about how they just purchased a radiator hose and used it to make a silencer with the monolithic baffle core that Sig Sauer submitted. So a person can quite easily make a homemade silencer, illegally doing so, of course, but can do so because of the design of this item. In addition, it's longer silencers. Aside from length, what are the design features that make it work better as a silencer that don't need to be there for any other reason? Sure. You can see that at appendix pages 90 to 92. There's progressively spaced different size baffle that create expansion chambers when that tube is added. So a silencer works by more slowly dissipating the propellant gases to allow greater cooling and expansion before it hits the cold air, reduces the sound. Muzzle brake, on the other hand, simply wants to get that propellant gas out as quickly as possible so you reduce recoil. So what the design here does is precisely what a silencer core does, and we know that because it's the precise silencer core that plaintiff uses in their actual, the item they market as their removable silencer. So other than the desire to make it into an effective silencer, you wouldn't space the, what is it, slots or holes? Yeah, there's sort of, there's a hole that the bullet can go through, and then it's kind of round metal. And the ATS position is you wouldn't space them in the way that they've been spaced other than for it to be a silencer. That's right. The design features here are for a silencer core. And in addition, the picture that we reproduced in our brief, I think, shows sort of a pictorial representation of what muzzle brakes generally look like, that this quote-unquote muzzle brake that they're claiming is a muzzle brake is two-and-a-half times longer than other muzzle brakes on the market. Its length-to-width ratio is quite different. It's long and thin rather than short and thick, as muzzle brakes generally are. In addition, as ATF found, the first prototype that was submitted to ATF had a hand guard on it such that if the core weren't encased, a person's hands would be burned operating the firearm. That's depicted at page 196 of the appendix. Yeah. How much weight should we give that? They said, whoops, we made a mistake, we've redesigned it, and now we want you to look at the new prototype that we've come up with. I think it's reasonable to look at what they submitted to ATF. I mean, this is a voluntary process. They wanted ATF to look at their firearm and tell them whether it met the definition of the National Firearms Act. So I think it's a burden on them to submit the prototype they want ATF to evaluate. They did that. ATF evaluated that prototype. They realized down the line that that was problematic, that it wasn't encased. And then at that point they added the longer hand guard. But I think it's appropriate for ATF and for the district court and this court to give that some weight. They're a firearm manufacturer. They can manufacture the prototype they want ATF to evaluate. Just, I guess, on that same point, if they're right and this has got no features different from any muzzle brake other than length, then the fact that when they first put it together it didn't work very well as a muzzle brake wouldn't tell you very much about what their intent was. Well, it wasn't, Your Honor, that it didn't work well as a muzzle brake. It was that it would injure the person operating the firearm. Right. But that still wouldn't tell you that it wasn't a muzzle brake. It just tells you that it was a really bad one. No, what it tells you is that they intended it to be used with a tube, which would certainly make it into a silencer. I don't think they dispute that if this had a tube on it it would be a silencer. Yeah, but if as a muzzle brake it becomes a silencer if you put a tube on it, their position is that's true of all muzzle brakes. It would be very difficult to get tubes onto most muzzle brakes and they would not function as well as silencers. That's only because of length, right? That's not only because of length. What else? Length to width and then also the expansion chamber. So most muzzle brakes simply have slits along the side such that they wouldn't allow those gases a chance to cool off and expand in a way that would actually reduce sound. Whereas the silencer cord we're talking about here does that very thing, and if you add a tube it functions as an effective sound suppressor, which they know because they market that very item as a sound suppressor to law enforcement. Do you think there is an issue of law in this case? Your brother certainly seems to think that the agency's hands are tied, that as long as the manufacturer expresses an intent that it is something other than a silencer, that has to be given close to dispositive weight. That is their view. I don't think that's consistent with the statute, consistent with cases from other circuits. The United States v. Cyberson case, for example, that was a criminal case. The defendant said, no, no, I meant it to be a muzzle brake. I didn't intend it to be a silencer. The court said, no, we can look at the record and see if evidence actually undermines your stated intent. And, of course, every manufacturer would have an incentive here to say, no, this isn't a silencer, this is a muzzle brake, because they would avoid the $200 tax, they would avoid the registration. I think for all practical purposes, if it's a National Firearms Act weapon, they won't make it because of those extra additional costs. There are several times in their reply brief where plaintiffs, I think, may quite express their position is that because a silencer core can reduce recoil, the only way you'll ever have a silencer part is if it's assembled or sold with a tube. And I think Congress clearly wanted three different, you know, they added the combination of parts, they added the parts argument in 1986. Under plaintiff's interpretation, the standalone part really loses all meaning, I think. I think ATF appropriately looked here to what their intent was based on the design evidence, based on evidence in the record that contradicted their stated intent, which as Judge Lynch noted, I think all manufacturers could come in and say, this is not a silencer, this is a muzzle brake, and thereby avoid the National Firearms Act requirements. Thank you. We'll ask that the District Court be affirmed. Mr. Hallbrook. Thank you, Your Honor. Number one, there's nothing in the record about any sale or marketing of any silencer to law enforcement or the military. That came up in the appellant's brief. It was never in the record below. All we have in the record is that there were two prototypes made. Do you dispute that fact, or is that the sort of thing we can take judicial notice of? We don't think judicial notice can be taken of that. Do you dispute the fact? We dispute it, yes. All right. And particularly that the product here was fashioned after some other design. That's not accurate either. There's nothing in the record, and we would dispute it. The Syverson case that my colleague cited supports our position. Basically, you don't just look at what the manufacturer says. You look at the design of the product. And in that case, the court said it would not be an effective muzzle brake. It didn't have any of the slots cut that a muzzle brake would have, and it reduced noise. And in this case, we have all the slots that are cut. It is an effective muzzle brake. It increases noise a little bit, and it's intended only for use as a muzzle brake unless and until somebody wants to make a silencer. But if I understood the government's position correctly, they're saying that there are slits spaced in a way in this muzzle brake, that you would space them that way only for the purposes of making it a more effective silencer when in case. No, Your Honor. We dispute that. If you look at pictures, this is just longer than the muzzle brakes. There's a lot of pictures in the appendix. And this is longer, but the basic designs are the same. It slits out the side so that the force of the gases. But what are we supposed to do with the fact that there's a statement in the agency's ruling that is contrary to what you're saying? There are pictures which, I mean, I don't quite know how we're supposed to evaluate what normal muzzle brake slits are like relative to slits in the muzzle brake that would enhance the silencer effectiveness of the device. But I've got an agency that says, when you look at those pictures and you compare it to other muzzle brakes, this one works better in a silencer because of the way they've designed it. Is your position that there's no deference? First of all, the testing. What standard are we supposed to review that finding for? Well, I think you have to look at the statutory language. It's clear under Chevron 1. Yeah, I do. But now we've got a finding about the fact, about how this thing was designed. Well, the fact is it would be sold as a muzzle brake. They admit it's an effective muzzle brake. I understand that. The fact about whether the slits were designed in some way that enhances its silencer qualities when encased. The actual ATF report says the similarity in design, that they're the same. It does not say that it would be superior based on the way the slits are cut. It does not say that in the ATF report. If it did say that and if I was at the view it said that, is that something that we review for what? You may answer. Review for what's factually not disputed in the record would be that the only difference between this product is that it's longer than the other muzzle brakes that ATF concludes are muzzle brakes. I would really like an answer to Judge Barron's question. I'm sorry. Do we review it for what? For complaint error? What do we review it for? I would say it would be reviewed for the basic fact is that it's not a factual dispute that it would be looked at in terms of what's undisputed in the record. And I don't think there's any room for deference. We're talking about a criminal statute. It's got to have the same interpretation as in a civil case. So the agency fact findings are just irrelevant? I mean, that would have to be the conclusion we'd reach, right? If they just take the case the agency says we can show you every muzzle brake has slits that are, I don't know, a centimeter. This one has them five times as big. The only reason you would do that is because it makes it a silencer. You come back and say that's not true. Muzzle brakes often are designed this same way. There's a dispute, but there's a clear fact finding by the agency which has expertise. Ordinarily, we give agencies some deference on that fact finding. You're saying we should give them none? We should give them none if it still has a use as a product that's not as a silencer because of the word only in the statute. There should not be deference in that case. Thank you. Ms. Wright, I'm going to give you two minutes to respond. On the deference point, I think the agency's factual findings here do receive deference under the APA. It's a question of whether there was substantial evidence to support their finding. And are there cases that have done that? In this particular context? Yeah. I'm not aware of any with respect to this kind of classification decision, but I don't know why it would be any different from any other agency action that the APA applies to. With respect to the question of is there any evidence in the record that they make a removable silencer, there is plenty of evidence of that. So if you look at appendix pages 90 to 92, you can see ATF asked them to submit their removable silencer and their machine gun, and you can see a side-by-side comparison of those two items. So the record does have evidence on that point, Your Honor. Thank you. Thank you both. Those were very helpful.